Our third case for argument is Hewitt v. Capital One Bank. May it please the Court, Your Honors. My name is Robert Finkel. Mr. Finkel, please proceed. May it please the Court. My name is Robert Finkel. I represent the plaintiffs in this action, Daniel Hewitt and Lynn Thompson. The standard of review on this appeal is de novo. Plaintiffs' allegations are subject to liberal notice pleading standards under Rule 8a. Plaintiffs are members of a class that maintained high-yield, FDA-insured IRA cash deposits with Capital One. Capital One obviously is a prominent bank in the United States. Capital One sought in 2021, however, to exit the IRA business, and pursuant to Section 8.09 of the IRA Agreement with Customers, had sole discretion to choose a successor IRA custodian. However, under established case law, including the recent Johnson & Johnson decision by the Delaware Supreme Court, the sole discretion has to be subject to the covenant of good faith and fair dealing. And in the words of the Supreme Court, when the party exploits the Supreme Court of Delaware, when the party exploits that discretion in a manner that defeats the overarching purpose of the bargain, courts may imply a requirement that such discretion be exercised reasonably and in good faith to ensure that the discretionary power is applied consistently with what the reasonable parties would have agreed to at signing. And what Capital One did was totally antithetical to the covenant of good faith and fair dealing because they designated as the successor custodian an entity that was not FDIC-insured and therefore could not pay high yields on FDIC deposits, nor were they a broker-dealer that was subject to SEC oversight. The implied covenant of good faith is the obligation to preserve the spirit of the bargain rather than the letter, the adherence to structure rather than form. And in moving the money to Inspira, you know, what happened was first Inspira could not pay high yield on FDIC deposits and therefore had to sweep the cash to a third-party program bank and essentially paid peanuts to the depositors. I must say I don't even understand your theory. Capital One allowed your client to designate any recipient. Your client could have said don't send the money to Inspira Millennium, send it to Vanguard, send it to Fidelity. Is there any dispute about that? Well, it doesn't say any custodian. It says sole discretion and the discretion is subject to the covenant of good faith and fair dealing. Look, I am asking you if there is any dispute about what Capital One said when it resigned, that is that your money, your client could choose where to send the money, that they could have said please send the money to Vanguard, please send the money to – You're right, Your Honor. There's a letter that went to the client that said that you have 60 days. If you choose to, you could choose – So why should we treat what Capital One did as if it had locked your client into the lowest return fund at Millennium? It didn't do that. Because deposit money is historically very sticky and people are inundated with letters of that nature. But that's reading. The mere fact that Inspira was designated is in itself a breach of the contract. So once you have a breach of the contract, you can rely on the good faith of your contracting partner. You're just assuming your conclusion. Yeah, or put another way, to my eye, what you're doing is you're reading into paragraph or section 8.09 some kind of guaranteed return from a successor custodian. No, but what I am reading into it is that in the exercise of sole discretion, Capital One had an obligation to transfer the money to a like-kind custodian that would act in a manner similar to Capital One. That's in the covenant of good faith and fair dealing. That's like in the Virginia verniculture case that we cite. Judge Easterbrook is saying they sent, on April 13th of 2022, they sent Mr. Hewitt a letter. They told him exactly what they were going to do and when. No, but they also said that Inspira, the name at the time was called Millennium, but Inspira was one of the largest independent custodians in the United States. They didn't disclose A, that they're going to impose a draconian arbitration agreement on customers, and B, that they were going to get paid essentially no return on the money. So the letter itself was deceptive and gave the class members, including our clients, confidence that the money was going to somebody suitable. I mean, that's imbued in the covenant of good faith in the language in the Johnson & Johnson decision from the Delaware Supreme Court that I just read that you're entitled to the reasonable benefits of your agreement if somebody's going to exercise discretion. That's just the case law. But, you know, it is unfair, inequitable, and a violation of law among the hundreds or thousands of suitable custodians for IRA accounts to transfer probably to the least suitable entity, which is Inspira, because it's not FDIC-insured. Vanguard is not FDIC-insured. Most of the places where there are third-party investments in this economy are not insured. They are the high-return but fairly safe investments. No, but if you go to Vanguard, you're defaulted into a mutual fund that currently pays about 4%. You're not. You're actually defaulted into something called a settlement fund, which is a money market fund very similar to where Millennium put the money. And then you have to choose a particular investment. That is exactly the offer Millennium made. But your client, once the funds arrived at Millennium, didn't choose any other investment. Well, if I made, and it's not in the record, I believe I'm fairly familiar with Vanguard and Fidelity and the primary, if not the exclusive, sweet product at Vanguard, I believe is a government-guaranteed 95% government agency money market fund that pays a high yield comparable to what Capital One paid. In any event, if I could move on, the issue is the exculpation clause. We contend that the exculpation clause, which has to be read consistent with the understanding of the parties, only excludes claims based on future conduct outside of what Capital One did. That Capital One, given the covenant of good faith and fair dealing, the obligation to transfer the money to a suitable custodian, cannot in the same breath exclude from liability the very act for which it's liable, especially without clear disclosure to investors. So perhaps Capital One could say that we cannot be liable under any circumstances for the transfer of money to a third-party custodian. Whether or not that's okay, I don't know. But it gave people belief that in 8.09, the only exclusion would be for future claims that were outside of the specific violation of the covenant of good faith and fair dealing for which Capital One is responsible. And I can cite to a number of cases on that point. But one thing that I want to state specifically is with regard to the e-commerce case that Judge Chang relied on, the Chancery Court Vice Chancellor Parsons, even though he applied the exclusionary, the exculpatory clause said the clause itself was ambiguous. And I emphasize this because it wasn't actually in the brief. But in Vice Chancellor Parsons' opinion at page 47, he says the actual provision was ambiguous and, quote, suggests that the parties did not intend to preclude proof of gross profits. The court added in language that any other interpretation would be unreasonable. And, of course, the e-commerce case was a complex business transaction between sophisticated parties, and exculpation clauses are generally disfavored, especially in contracts of adhesion. But the point is that interpreting the exculpation clause to exculpate the very conduct of Capital One and the obligation to transfer to an appropriate custodian would be, in the language of Vice Chancellor Parsons, unreasonable. You spend a lot of time debating with the other side the choice of law question here between Delaware and Virginia. We don't think it's dispositive, but clearly the agreement in 8.16 says that the law of the domicile will apply and there's no dispute that that's Virginia. And then that IRA agreement has a number of attachments that are specifically incorporated by reference. You agree that neither side's pointing out a material difference in Delaware and Virginia law? Yeah, I do agree. I mean, there might be something down the road, and the e-commerce case is a Delaware case, but as I just suggested, I think it actually supports us because the exculpation clause was found by Vice Chancellor Parsons to be ambiguous and, therefore, interpreted against the party seeking to argue it. Actually, Delaware, because of the Chancery Court, has a number of opinions through business contracts that incorporate Delaware law. And one could argue that the law might be better developed in Delaware, but there might be some issue down the road that there's a difference between Delaware and Virginia law because I don't think there's any dispute on this record that Virginia law should apply because the agreement that Capital One seeks to incorporate is, I'm not sure what it is, but it's inconsistent with the disclosures that are being made. Capital One, I assume, would not say in one agreement that Virginia law should apply and in a separate agreement that it tends to incorporate by reference that Delaware law should apply. So it's clear on the record that the separate agreement that references Delaware law is not incorporated by reference. Thank you. Thank you, Mr. Finkel. Mr. Toro. Good morning, Judge Easterbrook, and may it please the Court. John Toro with King & Spalding on behalf of the appellee defendant Capital One. Under plaintiff's contract with Capital One, they always had options about where to maintain their retirement accounts. When they were told that Capital One was exercising its right to resign as custodian, plaintiffs had the unfettered right to pick their own custodian, but they didn't. Even after their accounts were transferred to Millennium, they could have taken their business elsewhere at any point if they were unhappy with Millennium's investment offerings or fees. Instead of acknowledging the freedom of choice plaintiffs had at all times, they filed a lawsuit blaming Capital One for the way Millennium managed their accounts. Because plaintiff's contract with Capital One precludes them from holding Capital One liable for Millennium's conduct, the district court correctly dismissed plaintiff's claim against Capital One. This court should affirm that dismissal. Before turning to the merits, I'd like to say a brief word on… You said the only place that can handle your money is Millennium, and the only fund at Millennium into which your money will be placed is the lowest paying fund. Would you still be making this argument? Well, the Section 809 of the agreement gives Capital One the right to designate the successor only if plaintiffs have not exercised that right themselves. So, yes, I think if the contract did say, though, in your Honor's hypothetical… We're not asking what the contract says. We know what the contract said. Suppose Capital One had said, we are resigning in 30 days, which we have a right to do. We are moving your money to Millennium, and if you want it to go anyplace else, go fish. At Millennium, it's going to go into a sweeps account, which is not paying any interest. And if you want anything else, go fish. Would you be making the argument that Capital One is totally exculpated? No, we would not be invoking Section 809 in that scenario, because to comply with Section 809, Capital One has to give the account holder the ability to designate their own successor, and only if the account holder doesn't do that can Capital One then exercise its right to choose a successor. Just a quick word on… I mean, in fact, isn't that what the resignation… I think you guys call it the resignation notice, or somebody calls it that. Certainly what it said. Yeah, isn't that what it says? That's exactly what it says, Your Honor. It says Capital One is resigning, as it had every right to do. There's no dispute about that. Capital One has made arrangements for your account to go to Millennium. Unless you want your account to go somewhere else, if you want your account to go somewhere else, let us know. We'll facilitate that, and if your account goes to Millennium, it will be defaulted. The funds will be defaulted into the cash sweep program that plaintiffs complained so much about. And it gave them two months, at least as I read the date, two months to do that. Yes, Your Honor, nearly two months, which is more than the 30 days required under… And then Millennium gave them the same notice, as I understand. I'm sorry, Your Honor. Millennium gave them the same notice. You could pick a different fund, or you could put it in a different investment. That's correct, Your Honor. They got notices from both Capital One and Millennium about the choice they had in this matter. Just a quick word on choice of law. We maintain that the district court correctly applied Delaware law, given the clear reference to that state's laws in the terms… Do you contend that there is any material difference between Delaware and Virginia law? No, Your Honor. Since the parties agree there is no material difference, why are the briefs wailing away at this question? It seems like a total waste of everybody's time and money. We agree with that, actually. The court really doesn't need to bog itself down on choice of law. Delaware and Virginia law are in accord on all the relevant issues. It is a little bit of a mystery. I don't know if I wasted my time or not, but I was counting the number of times that both sides were agreeing that Virginia and Delaware law was the same, and I reached at least four. And I thought, well, then why are we spending so much time on that? It is a fair point. And I think this court can apply Delaware or Virginia law to analyze this appeal and the outcome. I think we could apply Alaska law and get exactly the same outcome. Yes, Your Honor. Just a quick word on the merits. The district court correctly ruled, in our view, that Section 809 of the agreement bars plaintiff's claims. As this court knows, that provision says Capital I, quote, will not be liable for any actions or failures to act on the part of any successor custodian. The plaintiff's claims here run headlong into that provision. They claim that Capital I is liable to them because the successor custodian, Millennium, didn't pay high enough yields and charged account fees. Because the plaintiffs are complaining about the way Millennium managed their accounts after the accounts were transferred, their claims fall squarely within Section 809. Now, to be sure, plaintiffs say they don't seek to hold Capital I liable for Millennium's conduct. Instead, they say they're challenging Capital I's decision to select Millennium as a successor custodian after plaintiffs failed to pick their own. But if plaintiffs could get around Section 809 simply by recharacterizing their claims as being about Capital I's selection of the successor, the provision would be rendered toothless. That's because Section 809 will really only ever come into play in a situation where Capital I selected the successor and the account holder has a problem with something the successor has done. The district court rightly saw through plaintiff's attempt to circumvent Section 809. What matters, the district court reasoned, is that the plaintiffs would have no claim against Capital I if Millennium had paid them higher yields and not charged fees. As a result, the district court correctly concluded that Section 809 bars the claim here. Plaintiffs' own allegations confirm the district court's conclusion here that plaintiffs' grievance is really with Millennium. Throughout their complaint, plaintiffs complained that Millennium failed to pay high yields. They complained that Millennium charged annual and transaction fees. They complained that Millennium included an arbitration provision in its contract. These allegations are all about what Millennium did. Perhaps most tellingly, I draw the court's attention to paragraph 13 of plaintiff's complaint where they demand damages measured as, quote, the difference between what plaintiffs would have been paid by a successor custodian that paid a competitive high yield similar to Capital I and what they were actually paid by Millennium. That is a direct quote. Plaintiffs demand damages from Capital I based on amounts they were actually paid by Millennium. So for those reasons, we think that plaintiff's claim falls squarely within Section 809. Plaintiffs also argue that Section 809 is not enforceable. They are incorrect here. The cases they cite hold at most that limitations of liability exempting a party from its own negligence or tortious conduct are disfavored and strictly construed. Those authorities don't apply because plaintiffs don't bring tort or negligence claims against Capital I. They assert that Capital I breached the implied covenant of good faith and fair dealing. And under both Virginia and Delaware law, no conflict here, implied covenant claims are contract claims, not tort claims. Even the tort case law plaintiff's cite explains that courts analyze exculpatory provisions differently in tort and contract cases. In the Fourth Circuit's decision in Gill, for example, the court explained that the permissive standards used to assess the validity of provisions limiting contractual liability did not apply to the plaintiff's tort claim. And as Capital I explained in its brief, provisions limiting a party's contractual liability are broadly enforceable in both Virginia and Delaware. For example, the Delaware Chancery Court's carefully reasoned decision in e-commerce rejected the plaintiff's contention that a limitation of liability should be held invalid in the face of the other party's bad faith breach of contract. The court instead ruled that contracting parties are entitled to draft agreements to avoid certain of the duties and liabilities that are normally part of the contractual relationship. The Supreme Court of Virginia's decision in Blue Cross of Southwest likewise upheld a provision limiting a party's contractual liability, and numerous decisions from Virginia courts have followed its reasoning. On the other side of the ledger, plaintiffs have not cited a single decision invalidating a provision limiting a party's liability in contract under either Delaware or Virginia law. Now finally, plaintiffs say that Section 809 logically applies only to a successor custodian's unforeseeable or superseding acts, and they contend the provision doesn't apply here because Millennium's conduct was foreseeable. On this point, plaintiffs badly misread the contract. Again, Section 809 states that Capital I, quote, will not be liable for any actions or failures to act on the part of any successor custodian. Any actions or failures to act means? I keep coming up with these hypotheticals. So suppose Capital I had said we're resigning in 30 days, as the contract allows, and we are giving your money to Charles Ponzi. Mr. Ponzi is promising extraordinary rates of return, right, 10% a month. Capital I does that because Mr. Ponzi has promised Capital I a cut. And of course, everybody who knows who Charles Ponzi is takes the money and moves it to Vanguard, but Ponzi gets 10%, the people who sleep through the transaction. And you then get a lawsuit by one of the people who sleeps through the transaction. Do you think the exculpatory clauses in the contract would protect Capital I? Not in that situation, Your Honor. Why not? On your reading of them. That's right. So the contract requires that Capital I can only designate a custodian that has the approval of the Secretary of Treasury to serve as the custodian. And in your example, in Your Honor's example, Mr. Ponzi is not going to have IRS approval to serve as custodian. Not at the moment, but his successors will manage to get approval. You remember Bernie Madoff, who actually had approval and was reviewed by the SEC year in and year out, but was running a giant Ponzi scheme. So I'll change my hypothetical. I'm giving your money to Bernie Madoff. He had approval. If Bernie Madoff had approval at the time that Capital I made the transfer, then the contract would bar plaintiffs from suing Capital I for relying on that IRS approval to serve as custodian and suing Capital I. Now, of course, nothing would prevent plaintiffs from suing Bernie Madoff in that example or from exercising the freedom of choice they had at all times. I don't think Bernie Madoff was good for all the judgments entered against him. That's fair, Your Honor. But the safety valve here is the IRS approval. That's the requirement that precludes the parade of horribles that plaintiffs have pointed to in their briefs. And this does touch on plaintiffs' argument that foreseeability is the touchstone under 809, which we disagree with. Plaintiffs say 809 only bars liability for a successor's unforeseeable conduct. That's not what the language says. Any actions or failures to act means just that. The language isn't limited in any way to superseding or unforeseeable conduct on the part of the custodian. Now, plaintiffs rely on a host of tort cases addressing issues of proximate causation to support their foreseeability issues. But the issue here is one of contract interpretation, not proximate cause under tort decisions. I will add, though, that plaintiffs' misplaced reliance on tort decisions highlights a fatal problem with their interpretation. Their reading of Section 809 would render the provision superfluous. Plaintiffs hold that parties aren't liable for damages caused by the unforeseeable superseding acts of third parties, even without a contractual limitation of liability. The same is true in contract cases. It's been the law since Hadley v. Baxendale that a breaching party isn't liable for unforeseeable damages. So accepting plaintiffs' reading that Section 809 precludes liability only for a successor's unforeseeable acts would mean the provision doesn't do anything that background common law principles don't already do. And courts reject, routinely, contract interpretations that render provisions superfluous. Just a final note, this court can stop with Section 809 as the district court did, but I briefly note there's another limitation of liability provision that the court could use as an alternative basis to affirm the district court's order. Section 803 of the agreement says Capital I will not be responsible for losses of any kind that may result from the account holder's actions or failures to act. Under their agreement, plaintiffs were required to select another financial organization to serve as successor custodian within 30 days of receiving notice that Capital I was resigning. Plaintiffs didn't do that, and it's only because of that failure that Capital I had the right to select any IRS-approved custodian, including Millennium, as a successor. So we think that by complaining about Capital I's selection of Millennium, by all accounts a successor that has the approval of the Secretary of Treasury, plaintiffs are seeking to benefit from their own breach of the agreement, which required them to pick a successor in a way that Section 803 forbids. So in closing, we believe the district court correctly held Section 809 bars the plaintiff's claim, and we also think the claim is independently barred by Section 803, and we ask this court to affirm the district court's judgment. Thank you, Your Honor. Thank you, counsel. Anything further, Mr. Finkel? Yeah, a few things. Wait until you reach the podium, Mr. Finkel. It's like in basketball. If the ball dribbles out, you get 27 seconds. Your Honor, the first thing I just want to address is Mr. Torrey says we could have sued Bernie Madoff. The fact is we couldn't sue Inspira because Capital I allowed Inspira to slip into the Inspira IRA agreement, an arbitration clause which compels us to go through the commercial arbitration proceedings at JAMS. So we can't, Mr. Torrey says, well, we can't sue Capital I because there's an exculpation clause. You know, we know that those are disfavored. These are not sophisticated parties. It's a contract of adhesion. But anyway, Mr. Torrey says we can't sue Capital I, but Mr. Torrey also says we can't sue Inspira because we allowed Inspira to disseminate a user agreement that has this arbitration clause, which Judge Chang enforced, which I believe is an error, but it was unappealable. So we essentially have no remedy. We can't sue Capital I. We can't sue Inspira. You know, the second point is we have a lot of contract— Have you commenced an arbitration against Inspira? Excuse me? Have your clients commenced an arbitration against Inspira? We're in discussions with Inspira with regard to the procedures, but the reality is that in order to start the arbitration, we have to pay $1,000, and Inspira is not willing to waive that. So we're not going to spend $1,000 on an individual case to recover $200. The second thing is we do have a lot of contract cases. We have the Alkin case, data management, Fairfax. There are a lot of contract cases where the courts don't enforce the arbitration provision. In fact, the e-commerce case, not the arbitration provision, the limiting liability provision, the e-commerce case itself is a contract case where Judge Parson said that the agreement's ambiguous and I'm not going to enforce it against the plaintiff and awarded net profits in favor of the plaintiff. But the most important point, again, and I'll go back to it, deposit accounts are notoriously sticky. So Capital One could send out almost any letter to the depositors and say you can choose within 30 days or 60 days and those depositors are unlikely to move the account. And here Capital One said that they value every customer relationship. So they cause people to rely on Capital One and people went to Inspira and they probably left within six months like our clients did because they were so terrible. But if we get into discovery, Judge Easterbrook, I think you'll find that a disproportionate number of depositors actually looked at this letter and said, oh, I trust Capital One's designation, I'm going to move my money. Thank you, counsel. Thank you, Your Honor. The case is taken under advisement.